JACOB J. FELS et al. Appellees, vs. CHARLES F. ARENDS et al. Appellants.

*Opinion filed December 21, 1927.*

1. STARE DECISIS—*opinion must be considered in light of facts of the case.* In considering a prior decision as a precedent the language used in the opinion of the court must be viewed in the light of the facts of the particular case.

2. EASEMENTS—*when easement for right of way will not arise by implication on severance of estate.* For an easement for a right of way to arise by implication upon the severance of the property of a common owner, there being no reference thereto in the grant, the easement claimed must be so highly convenient that closing the way would be a detriment and injury to the party claiming the easement in the reasonable and convenient use of his property; and such is not the case where the easement claimed is for a passageway between two apartment buildings and the party claiming the easement has access to the rear of his building on the other side and on his own property, the only difference being that the passage claimed as an easement is of concrete all the way while the other passage is not.

APPEAL from the Superior Court of Cook county; the Hon. OSCAR HEBEL, Judge, presiding.

BANGS & FRANKHAUSER, for appellants.

HOLLAND F. FLAHAVHAN, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

During the year 1911 James S. Knight acquired title to three or more lots having a frontage on Winthrop avenue, in the city of Chicago, and prior to 1913 improved the property with three separate apartment buildings facing on Winthrop avenue. Upon all of the north fifty feet frontage a three-story six-apartment brick building was erected. The 2½ feet immediately adjoining this building on the south was left vacant. Upon all of the next fifty feet frontage, south, another three-story six-apartment

brick building was constructed. The five feet immediately south of this building was left vacant, and upon the property south of and immediately adjoining this five-foot vacant strip Knight built a three-story three-apartment brick building. He laid a concrete walk from the sidewalk on Winthrop avenue in front of the several buildings, extending back upon the 2½-foot vacant strip between the two north or six-apartment buildings. This walk widened out, due to an offset in each building, before it reached the rear or east line of the respective structures, and at those two latter points the walk branched and a narrow strip of concrete walk extended around on a curve to the steps or rear entrances of each of the six-apartment buildings. A sidewalk was also constructed on the five-foot strip left vacant between the middle or six-apartment building and the south or three-apartment building. This walk extended back toward the alley from the front sidewalk on Winthrop avenue and was five feet in width for a short distance and then narrowed to 2½ feet in width, and continued upon the south half of the five-foot strip except at a point to the rear of the two buildings, where the walk curved over upon the north half of the five-foot strip to get around a tree. This walk did not extend to the rear entrance of the middle or six-apartment building and the proof shows was used only by the occupants of the south or three-apartment building. A fence constructed of wood posts set a few feet apart and connected by pieces of lumber placed horizontally near the top and bottom of the posts extends from a corner of the south wall of the middle or six-apartment building back along the north line of the five-foot vacant space previously mentioned, to the alley. The latter walk described, and the fence as well, (the latter of which is upon appellees' property,) are not here in controversy, as both are upon or adjacent to the five-foot strip between the middle and south apartment buildings. In March, 1913, Knight sold the north 52½ feet of his property abutting on Winthrop

avenue to the Arends, who are appellants here. That con-
veyance, of course, included the north six-apartment brick
building and the 2½-foot vacant strip immediately south
thereof upon which the concrete sidewalk was built, ex-
tending back between the two six-apartment buildings.
Nothing was said in that deed or any other writing con-
cerning the use of the 2½-foot strip or walk as a passage-
way to or from the middle or six-apartment building lo-
cated immediately south of this strip. In November, 1915,
Knight sold to appellees' predecessors the next 52½ feet
of his Winthrop avenue property, which was immediately
south of and adjoining the Arends tract. This conveyance
included the other six-apartment (or middle) building as
well as the north 2½ feet of the five-foot vacant space
located on the south side of this building and between it
and the three-apartment building. Nothing was said in
this conveyance or any other written instrument concerning
the use of the 2½-foot walk and passageway between the
two six-apartment buildings. The buildings and walks as
described are in the same location as when title to all three
parcels of property was in the common owner, Knight,
and during the past fifteen years persons residing in either
of the six-apartment buildings, and the public generally,
have had free and unmolested ingress to and egress from
both of said buildings over the 2½-foot vacant space be-
tween them. During the year 1925 appellants began the
construction of an iron or metal-mesh fence extending from
the alley along the south line of the 2½-foot strip left va-
cant between the two six-apartment buildings, to the cor-
ner of appellees' building situated on that line. The erec-
tion and completion of this fence would have prevented
access to and from the rear entrance of the middle or six-
apartment building owned by appellees over the 2½-foot
passageway. Appellees filed their bill in the superior court
of Cook county seeking to establish an easement over the
south 2½ feet of appellants' premises, which is the passage-

way in question, and to obtain a restraining order protecting their present means of access by sidewalk to and from the rear entrance of their apartment building. The cause was referred to a master in chancery to take the proof and report his conclusions of law and fact. The master made his report finding in favor of appellees, to which objections were filed and overruled. The objections stood as exceptions before the chancellor, where the same were overruled. A decree was entered in accordance with the recommendations of the master, appellants were perpetually enjoined from obstructing the passageway between the two six-apartment buildings, and judgment was entered against them for costs. From that decree they have prosecuted an appeal to this court.

No easement was created in favor of appellees' property by any reservation in the deed or special words of grant. The master found and the court decreed that by reason of the fact both properties were originally owned by Knight and the improvements, including the sidewalk and passageway in question, were constructed by him, an easement was created in favor of the owners of appellees' property. If any easement was created it was by implication. There is no claim of any prescriptive right of easement in appellees, and the dispute turns upon when an easement is created by implication.

Both parties have in their briefs cited the same Illinois cases in support of their respective contentions, appellants claiming that an easement by implication is created where it is reasonably necessary or essential to the proper enjoyment of the estate granted. Appellees contend that easements by implication are not easements by necessity, but they are created where the owner of two heritages so arranges them that one derives a benefit or advantage from the other which is continuous and obvious in character, and where the owner sells them, or one of them, without any reservation in the deed, there is an implied understanding

the advantages and burdens shall continue as before separation of title. In *Fossum* v. *Stark*, 302 Ill. 99, the court quoted from 9 R. C. L. 755: " 'The general rule is, that where during the unity of title an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another, which at the time of the severance is in use and is reasonably necessary for the fair enjoyment of the other, then upon a severance of such ownership there arises by implication of law a grant of the right to continue such use' where such grant is not reserved or specified in the deed." The court further said that by the same authority three things were essential to create an easement by implication upon the severance of unity of ownership: First, a separation of the title; second, that before that takes place the use shall have been so long continued and obvious as to show it was meant to be permanent; and third, "that the easement shall be necessary to the beneficial enjoyment of the land granted or retained." The court further said there is a conflict as to the degree of necessity required, some courts holding easements would be implied only when the necessity for them is strict; others that an easement by implication is a reasonable and not an absolute one, and that the Illinois cases fall under the latter rule. After citing cases the court quoted from *Hankins* v. *Hendricks*, 247 Ill. 517: "It is not necessary that the easement claimed by the grantee be absolutely necessary for the enjoyment of the estate granted, but it is sufficient that it is highly convenient and beneficial thereto."

Knight, who originally owned the property of both appellants and appellees, testified he built a six-flat apartment building on the north 52½ feet, and on the adjoining 52½ feet of property south he built another six-flat building; "I left 2½ feet to each building." The 2½-foot passageway between the two six-apartment buildings was a convenience in the use of both properties and was used by the occupants thereof and the public, but the way does not

appear to have been an absolute necessity to the south six-apartment building, and the decision turns upon whether the use of the passageway was a reasonable necessity to the south six-apartment building and not merely a convenience.

In *Morrison* v. *King*, 62 Ill. 30, the court said: "The foundation of the doctrine of easement in this and similar classes of cases is a disposition and arrangement of the premises as to the uses of the different parts by him having the unity of seizin, and then a severance. It being a general principle in relation to grants that every grant of a thing naturally and necessarily imports a grant of it as it actually exists unless the contrary is provided for, it would seem to follow that each portion of the severed premises should pass subject to all the burdens and advantages imposed or conferred by the proper owner. Such, certainly, is the tendency of the cases cited by appellees'. counsel. * * * Now, can it be successfully maintained that in such a case, or one under the 15th section, the proceeding under the authority of the law, which has the effect in one case to vest the widow with a life estate and in the other with an absolute estate in fee simple, shall not have the effect to pass any of those things as incidents appendant and appurtenant to such lands and tenements as would pass by a conveyance without mention of appurtenances? We think not. It seems to us to be a reasonable rule, consistent alike with justice and the analogies of the law, that where the severance of an estate consisting of two or more heritages occurs by reason of the death of the common owner and the laws of descent and of dower, and an allotment of the latter is made under the statute, the dowress, in the absence of any restrictions in the proceedings, should be entitled to take the portion allotted to her as it existed at the time. If conveniences provided for such portion by the common owner were continuous and apparent and necessary to the reasonable enjoyment of it, they will be presumed to have been taken into consideration by the commis-

sioners and regarded as a charge upon the other portion in favor of that allotted and as passing with the estate by operation of law." The court said in *Feitler* v. *Dobbins,* 263 Ill. 78: "The law applicable to the situation here is, that where the owner of entire premises arranges for ways, light, etc., for the benefit of the different parts or portions of the premises, and afterwards the premises are severed and the title vested in separate owners, each grant will carry with it, without being specifically mentioned, the rights and burdens and advantages imposed by the owner prior to such severance. The doctrine is founded upon the principle that the conveyance of a thing imports a grant of it as it actually exists at the time the conveyance is made unless a contrary intention is manifested in the grant. This doctrine has often been applied by this court." (Citing cases.) The court held in that case that the existence of the easement was "highly convenient and very beneficial" to the owner of the property. In *Martin* v. *Murphy,* 221 Ill. 632, it was held the easement was the only means of access to the premises from the street and was "reasonably necessary." The court said in *Jarvis* v. *Seele Milling Co.* 173 Ill. 192, that a mere convenience is not an easement, "but the right or privilege must be necessary or essential to the proper enjoyment of the estate granted." In *Cassidy* v. *Cassidy,* 309 Ill. 465, the court said: "It is not necessary to prove that the easement is absolutely necessary for the enjoyment of the estate claimed." *Cihak* v. *Klekr,* 117 Ill. 643, was cited, wherein Washburn on Easements was quoted as authority that an easement must be reasonably necessary to the enjoyment of the estate. In the latter case it was said that the easement claimed must be "highly convenient and beneficial." *Keen* v. *Bump,* 310 Ill. 218, and *Hoepker* v. *Hoepker,* 309 id. 407, use substantially the same language.

As we have said, both briefs cite substantially the same authorities, and we have referred to a number of them and

to some language therein used. The language used in an opinion of the court of course must be viewed in the light of the facts of the particular case. In some of the cases the easement was absolutely essential to the enjoyment of the property; in others it was highly convenient and very beneficial.

We are of opinion that the easement claimed over the property of another must be so highly convenient as that closing the way would be a detriment and injury to the party claiming the easement in the reasonably convenient use of his property. The 2½-foot way left between appellants' and appellees' buildings by the then common owner, on appellants' property, is no doubt of some convenience to appellees in going to and from the rear of their property, but the question is, is it so highly convenient that closing it will seriously interfere with them in the beneficial enjoyment of their property? If appellees had no other access to the rear of their property a different situation would be presented from what the record in this case presents. Between appellees' building and the next building south of it is a five-foot way by which appellees may reach the rear of their property. The way is partially concreted with a 2½-foot walk on the south half thereof but there is no walk leading therefrom to the rear of appellees' six-apartment building. The north half of the way is on appellees' property and the south half of it belongs to the owner next south. The evidence shows there is a wooden fence on the line of appellees' building extending to the alley in the rear of their property. Entering the five-foot passageway from Winthrop avenue and going to the rear, that fence is between the passageway and the rear entrance to appellees' building and is an obstruction to access from the passageway. Appellees say in their brief the fence was placed there under a recorded agreement requiring it to remain in its present location. This is denied by appellants, and we have been unable to find in the record any-

thing to show why this fence was placed on appellees' property or any reason why they cannot remove it if they so desire. If the fence is removed there is no obstruction whatever to the rear of appellees' premises from the five-foot passageway. The only difference we can see between using the two passageways is, that a concrete walk is laid from the 2½-foot passageway on the north of appellees' building to the steps of the rear entrances of appellants' and appellees' premises, while no sidewalk is laid to the rear steps of appellees' premises from the five-foot passageway on the south side of their building. The fence referred to is on appellees' property, and in the absence of proof we cannot assume that they cannot remove it if they desire to do so. It appears to us that with a little improvement and re-adjustment the five-foot passageway would afford just as convenient passage to and from the rear of appellees' property as would the 2½-foot passageway. That the 2½-footway is concreted to the rear steps of appellees' building does not make that easement so highly convenient as to render its use reasonably necessary to the enjoyment by appellees of their property when there is another way of access by which they may have the full enjoyment of their property. In *Weber* v. *Aluminum Ore Co.* 304 Ill. 273, the court said: "Under the circumstances shown in the record, there being a frontage of the land of appellants both on Thirty-fifth street and Missouri avenue, appellants have an outlet to a highway from their own lots without reference to access to this disputed alley, and therefore it is not required that this roadway or alley be held to be a way of necessity, as held in *Gilfoy* v. *Randall,* 274 Ill. 128."

It does not appear from this record that the 2½-foot passageway between appellants' and appellees' property is so highly convenient to the enjoyment of appellees' property that to prevent them from using it would be such a serious inconvenience or injury to them in the enjoyment of their

property as to render their property less valuable or desirable. In our opinion the court erred in sustaining the injunction and making it perpetual.

The decree is reversed and the cause remanded.

*Reversed and remanded.*